THE FIRST NATIONAL BANK OF BATAVIA, RESPOND-
ENT, *v.* HENRY F. TARBOX, AS ASSIGNEE AND TRUSTEE OF
JAMES H. JONES AND EVELYN F. HOUSE, INSOLVENT
DEBTORS, APPELLANTS, IMPLEADED WITH OTHERS.

*Partnership debts are joint, and not joint and several, obligations of the partners — when
a mortgage will be construed to cover only individual and not firm debts.*

December 23, 1880, one Jones and his wife executed and delivered to the plaintiff
a bond secured by a mortgage upon real estate owned by Jones, conditioned " as
a security for the payment of any and all indebtedness which said James H.
Jones now owes, or may hereafter owe, at the First National Bank of Batavia
(the plaintiff), and as a continual security therefor to the amount of seven
thousand five hundred dollars." Prior to that time Jones had formed a copart-
nership with one House, which was to commence business on January 1, 1881.
February 2, 1881, the plaintiff loaned Jones, individually, $500, and thereafter
$1,500, which latter amount was repaid by Jones. Thereafter the $500 so loaned
to Jones was, with $1,000 loaned to the firm, carried into a note made by the
firm. Subsequently Jones made a general assignment for the benefit of first
his individual and second the firm creditors.

In an action subsequently brought by the plaintiff to enforce the mortgage:

*Held,* that the condition of the mortgage could not be construed as indicating an
intention on the part of the mortgagor to secure the payment of the firm debts.

That as the firm debts were joint, and not joint and several, obligations
they were not debts of Jones as an individual and were not covered by the
mortgage.

APPEAL from a judgment in favor of the plaintiff, entered upon
the trial of this action at the Genesee County Special Term.

The action was brought to foreclose a mortgage executed by
James H. Jones and wife to the plaintiff, on the 23d of December,
1880. The mortgage was intended as a security for debts there-
after to be contracted. In September, 1883, Jones made a general
assignment of his individual property, including the mortgaged prem-
ises, giving a preference to his individual creditors, the remainder to
be applied in payment of the copartnership indebtedness of Jones
& House, of which firm he was a member. At the time of the
commencement of this action the assignment had been executed and
delivered, and there was due from Jones individually, to the plain-
tiff, $500, and there was due also to the plaintiff a copartnership
debt of $7,000. The trial court held, that by the terms of the

mortgage the same was a security for both the individual and copartnership indebtedness, and directed a decree accordingly. The assignee in whom the title was vested brings this appeal from this decree, insisting that the mortgage, as a security, was limited to the individual indebtedness of Jones. That is the only question presented on this appeal.

*Myron H. Peck,* for the appellants.

*George Bowen,* for the respondent.

BARKER, J. :

The legal proposition presented by the exception is this : Can the mortgage be enforced as a security for the payment of the debt owing by the firm of Jones & House, to the plaintiff? The plaintiff's position is, that a copartnership indebtedness is a several as well as a joint liability on the part of the members, and payment of the same can be enforced against each individually. It was upon this view of the law that the learned trial judge disposed of the case in the plaintiff's favor, and held that the copartnership debt was secured by the mortgage. In our consideration, the rule of law applied by the trial court does not prevail in this State as it does in England and some of the other States, but has been condemned by our courts as unsound, and the law in this State is now settled to be, that copartnership obligations are joint and not several, and this rule prevails both at law and in equity. Mr. Story, in his work on Equity Jurisprudence, does say, in speaking of the rights of copartnership creditors and the mode and manner in which they may enforce the payment of their debts out of the effects of a deceased member, that the doctrine is, "that every partnership debt is joint and several ; and, in all such cases, resort may primarily be had for the debt to the surviving partners or to the assets of the deceased partner." (Vol. 1, § 676.)

In Collyer on Partnership the rule is stated to be the same in a discussion of the same questions. But both of these authors rely wholly on the English cases as their authority for the rule laid down, and neither attempts to support the proposition by any argument of their own, based upon principle, or upon the nature of a copartnership promise.

Since the appearance of these commentaries, the question has been settled in our own courts and the legal proposition stated by these eminent commentators has been distinctly repudiated and the true rule is held to be, that a copartnership debt is a joint obligation only, and copartnership creditors must observe that principle in all legal proceedings instituted to enforce the collection of their debts. (*Lawrence* v. *Trustees, etc.,* 2 Denio, 587; *Haines* v. *Hollister,* 64 N. Y., 3; *Pope* v. *Cole,* 55 id., 124; *Lane* v. *Doty,* 4 Barb., 537; *Voorhis* v. *Childs' Exr.,* 17 N. Y., 354; *Richter* v. *Poppenhausen,* 42 id., 373; *Tracy* v. *Suydam,* 30 Barb., 110; *Trustees* v. *Lawrence,* 11 Paige, 80.)

In *Lawrence* v. *Trustees,* Mr. Justice JEWETT, in his opinion, says, in speaking of a copartnership debt, "that it is joint and not joint and several." And in *Pope* v. *Cole,* Judge GROVER uses substantially the same language in discussing the question whether a copartnership debt is several as well as joint. And in the other cases it was held, as in the last case, that upon the death of a member of a copartnership the common-law right of action survived against the surviving member, and none existed against the representatives of the deceased member. If the debt is several as well as joint, then upon the death of a member of the firm an action at law may be prosecuted as a matter of right for the purpose of securing payment of the debt against the representatives of the deceased member as well as against the survivors. It is because there is no several liability on the part of each member unless created by an express promise to that effect, that the courts have held that a partnership creditor cannot enforce payment of his debts out of the assets of a deceased member, until he has failed in proper judicial proceedings to collect the same from the survivor by reason of his insolvency. The assets of a deceased member are subject to an equitable lien in favor of the copartnership creditor, which may be enforced in equity when the remedies against the survivors have been exhausted. As a general rule, courts of equity do not entertain an action in any case where there is an adequate legal remedy by which full redress can be obtained. Hence it follows, to enable a creditor to collect his debt in equity from the estate of a deceased joint debtor, that he must show he has no legal remedy against the representatives of the deceased mem-

ber, and this is established on showing that the suit is to enforce the payment of a copartnership debt which cannot be collected from the survivor.

The judgment, therefore, so far as it holds that the mortgage is a security for the partnership debts of Jones & House, cannot be upheld on the grounds assigned by the Special Term.

We have been cited by the respondents to the case of *Doggett* v. *Dill*, an Illinois case, and reported in full in the Albany Law Journal (vol. 30, p. 274), to the effect that every partnership debt in equity is joint and several, and the holder of the same may, in case of the death of a partner, resort, in the first instance, to the surviving partners or to the assets of the deceased partner as he may elect; and the failure to proceed against the surviving partners until their insolvency is established is no bar to its collection from the estate of the deceased partner. In that case the court observed that a contrary rule had been established and followed in this State, and cited some of the authorities to which we have referred.

Another question remains for our consideration and it is : Does it appear by the terms of the mortgage and the attending facts and circumstances that it was the intention of the mortgagor to include the copartnership debt as ·an obligation to be secured by the mortgage lien ? The referee has found that the copartnership had been formed prior to the execution of the mortgage, with a view of commencing business on the 1st day of January, 1881, which was seven days after the date of the mortgage. The condition of the mortgage is as follows : " Which said mortgage is given as a security for the payment of any and all indebtedness which said James H. Jones now owes or may hereafter owe at the First National Bank of Batavia and as a continual security therefor to the amount of $7,500." It does not appear that any money was advanced by the bank to Jones individually or to the firm until the 2d day of February, 1881, on which day the bank loaned Jones $500, which at the time of the failure of the firm had been carried into a note made in the copartnership name, which also included the sum of $1,000, a debt owing by the firm. After the mortgage was given the bank loaned Jones individually other sums to the amount of $1,500, which he had paid before he made an assignment. These are the collateral facts and circumstances from which

we are to determine, together with the terms of the mortgage, whether it was the mortgagor's intention to secure any portion of the firm's indebtedness to the bank.

When a copartnership debt is created there is an obligation assumed by each member to pay the same, which can be enforced during the lifetime of the several members by an action at law prosecuted against all the members, based on their joint promise or liability, and in that mode of procedure their separate property may be reached by process of execution issued on the judgment. But this obligation is not primary and direct, it is ultimate or secondary. The debt created is not the debt of the individual members, it is the debt of the firm which, in the law, has a recognized existence independent of the membership. In a sense one owes a debt when he is under a legal obligation to pay it, which payment can be enforced by a resort to the course of procedure established by law. Yet at the same time it may be primarily the debt of another which can only be enforced upon certain conditions which he or the law has imposed. It did secure Jones' indebtedness which it is conceded the parties contemplated. Thus a purpose was effected by its execution without including the copartnership debts. The individual indebtedness of the mortgagor is specifically mentioned, and proper and apt words were used to secure that purpose. To give the instrument a broader meaning, the intention of the mortgagor should be plainly and unmistakably indicated. When the mortgage was executed the copartnership had been created; but it had not then commenced business operations. If its debts were intended to be secured thereby, by either party to that instrument, it is very natural to suppose that it would have been indicated by the use of words plainly importing that purpose. If it be said that the bank did not know at that time of the existence of the copartnership, then that circumstance tends to support the appellant's contention, that the mortgage was not given to secure the debts of the firm. We are of the opinion that the mortgage cannot be construed as indicating an intention on the part of the mortgagor to embrace the copartnership debts.

The judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulates within twenty days to reduce the amount to be made by judgment to $500, and interest

from September 11, 1883. Being the individual indebtedness of Jones, if he so stipulates, the judgment as so modified affirmed, without costs to either party.

SMITH, P. J., and BRADLEY, J., concurred.

Judgment reversed and new trial ordered, costs to abide event, unless the plaintiff stipulates within twenty days to reduce the amount adjudged to be due to the sum of $500, with interest from the 11th of September, 1883, in which case the judgment, as so reduced and modified, is affirmed, without costs of this appeal to either party.